IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

2019 NOV 22 A 11: 31

**BRANDON BROOKS** **PLAINTIFF**

VS. CIVIL ACTION NO. 2:19-cv-924

**CORRECTIONS OFFICER JUSTIN MCCLAIN;**
**CORRECTIONS OFFICER BURRELL FREEMAN;**
**AND**
**SERGEANT MURPHY DAVIS** **DEFENDANTS**

## COMPLAINT AND DEMAND FOR JURY TRIAL

The Plaintiff, Brandon Brooks, for his Complaint against the Defendants, Justin McClain, Burrell Freeman, and Murphy Davis, brought pursuant to 42 U.S.C. §1983, states as follows:

### NATURE OF SUIT

1. This is a civil rights action brought against two corrections officers and their sergeant for the cruel and unusual beating they inflicted upon the Plaintiff, which caused catastrophic, severely disabling injuries from which he will never recover.

### PARTIES, JURISDICTION, AND VENUE

2. The Plaintiff, Brandon Brooks, is a citizen and resident of the State of Alabama and resides at 3701 Loop Road, Tuscaloosa, Alabama 35404.

3. The Defendant, Justin McClain, was at all times a corrections officer with Alabama Department of Corrections, acting in his capacity as a corrections officer, and acting under color of law. He is hereafter referred to as "CO McClain."

4. The Defendant, Burrell Freeman, was at all times a corrections officer with Alabama Department of Corrections, acting in his capacity as a corrections officer, and acting under color of law. He is hereafter referred to as "CO Freeman."

1

5. The Defendant, Murphy Davis, was at all times a Sergeant with Alabama Department of Corrections, acting in his capacity as a corrections officer, and acting under color of law. He is hereafter referred to as "SGT Davis."

6. Each of the claims asserted against each Defendant in this case is asserted against them in their individual capacities only.

7. Plaintiff's allegations are brought under 42 U.S.C. § 1983 for violation of the United States Constitution, including the Eighth Amendment.

8. This Court has original federal question jurisdiction over this action under 28 U.S.C. § 1331 as Plaintiff alleges only counts arising under 42 U.S.C. § 1983.

9. This Court is the proper venue for this action pursuant to 28 U.S.C. § 1441(a) because the facts that gave rise to the Plaintiff's allegations all occurred in Elmore County, Alabama, which is located within the Middle District of Alabama, Northern Division.

10. CO McClain and CO Freeman used grossly excessive and completely unnecessary force against Brandon.

11. At the time of filing Brandon remains a patient hospitalized at the VA Medical Center in Tuscaloosa, Alabama and is not a prisoner confined in any jail, prison or other correctional facility.

12. Since the time of his injury and as the direct result thereof Brandon has remained severely and permanently disabled without the capability of bringing any grievance regarding the assault pursuant to any administrative grievance procedure.

13. Since the date of his injury no administrative grievance procedure has been available to Brandon through which he could bring any grievance relating to the force used against him.

## FACTUAL BACKGROUND

**A.     On March 3, 2018, CO McClain and CO Freeman used brutal, savage, and grossly excessive force against Brandon for no legitimate purpose.**

14.    On March 3, 2018, Brandon was confined by the Alabama Department of Corrections at the Staton Correctional Facility in Elmore, Alabama.

15.    On March 3, 2018, CO McClain and CO Freeman entered Brandon's cell and began yelling and cussing at Brandon for being "off his rack".

16.    CO McClain then pulled out his Mace, threatened Brandon with the Mace, slapped Brandon, and sprayed Brandon with the Mace.

17.    As CO McClain pepper sprayed Brandon, CO Freeman pulled out his baton and swung it at Brandon, hitting him on the side of his head.

18.    Brandon fell to the ground, where he was repeatedly kicked and stomped all over his body by CO McClain and CO Freeman.

19.    There was no need at any time to use any force on Brandon, and force was used against him solely for the purpose of inflicting pain and causing physical and emotional injury.

20.    After savagely beating Brandon, CO McClain and CO Freeman left him laying on the ground, severely and catastrophically injured, and declined to obtain him any medical care.

21.    After being abandoned by CO McClain and CO Freeman, Brandon attempted to go to the shower, but he collapsed from his injuries and had to be assisted into a bunk by other inmates where Brandon laid semiconscious, bleeding, and in critical condition.

22.    Inmate Antuan Jackson was able to get medical assistance for Brandon by alerting CO Walter Thomas, who found Brandon "lying on bed D2-20A, in an unconscious state, with bluish discoloration and bleeding from his right ear."

23. CO Thomas called for further assistance, and CO Freeman finally took Brandon to the medical unit.

24. 45 minutes later, Brandon was flown by Life Flight Unit to Baptist Medical Center South, where he arrived in the emergency department in critical condition, with a Glasgow Coma Score of 3.

25. At the emergency room Brandon was diagnosed with a traumatic subdural hemorrhage, multiple right-sided rib fractures, a left transverse process fracture of L2, bilateral nasal bone fractures, a left temporal bone fracture, and a substantial right pneumothorax.

**B.   CO McClain, CO Freeman, and SGT Murphy covered up the use of excessive force by CO McClain and CO Freeman**

26. After Brandon was airlifted to the hospital, CO McClain, CO Freeman, and SGT Murphy conspired to cover up CO McClain and CO Freeman's actions, and to impede the investigation of the incident.

27. CO McClain and CO Freeman made no report of their use of force despite being required to do so.

28. CO McClain and CO Freeman physically assaulted an inmate who witnessed the assault, and threatened to further harm him if he reported their actions.

29. SGT Murphy purported to investigate the cause of Brandon's injury, but ignored direct statements by inmates indicating that Brandon was injured as a result of CO McClain and CO Freeman's use of force, and that they failed to provide him medical care.

30. SGT Murphy drafted an Incident Report, which is incomplete and inaccurate, but nevertheless contains the following significant statements:

   a. Inmate Henderson saw an unknown person, later identified as Brandon, "holding his face with pepper spray on his clothes…"

4

  b. Inmate Frank or Frost "observed an inmate by the name of Brandon get maced…"

  c. Inmate Jones stated that Brandon "had an incident with the police. He then got pepper sprayed…"

31. Despite three inmates identifying Brandon as having been pepper sprayed, and two inmates reporting that they actually witnessed Brandon being pepper sprayed, SGT Murphy made no apparent attempt to identify the officers who pepper sprayed Brandon.

32. Instead, SGT Murphy alternatingly (depending on the report) attributed Brandon's physical injuries to falling in the shower or being assaulted by other inmates.

33. Brandon's injuries could not have been caused by falling down.

34. Only DOC officers possess Mace in the Staton Correctional Facility, so no inmate could have pepper sprayed Brandon.

35. No inmate reported that Brandon was assaulted by other inmates.

36. Inmates specifically witnessed CO Freeman and CO McClain pepper spraying and beating Brandon.

37. SGT Murphy knew that CO McClain and CO Freeman caused Brandon's injuries.

38. SGT Murphy knew that the force used by CO McClain and CO Freeman was excessive and unlawful.

39. The force used by CO McClain and CO Freeman against Brandon was typical of their interactions with inmates, was known to SGT Murphy, and was acquiesced and approved of by him, as evidenced in this specific case by his participation in covering it up.

40. SGT Murphy was CO McClain and CO Freeman's direct supervisor; as their supervisor he had to have specific knowledge that they had used and would continue to use excessive force on inmates, as their supervisor he had to know that their actions were likely to

cause grievous bodily injury to inmates, and as their supervisor he allowed, encouraged and acquiesced to their conduct.

### C. As result of the excessive use of force Brandon suffered a severe and permanent traumatic brain injury that has left him permanently immobile, unable to verbally communicate, unable to feed himself, and unable perform basic functions of living.

41. Brandon was initially treated at Baptist Medical Center South, where he remained in a persistent vegetative state with no ability to move or communicate.

42. While at Baptist Medical Center South, Brandon underwent a tracheostomy for respiratory failure, PEG tube placement with gastroscopy, insertion of an inferior vena cava filter, and had a burr hole drilled into his right frontal lobe.

43. In April 2018, Brandon was returned to the Kilby Correctional Facility, but they were unable to care for his severe injuries or medical needs resulting from his brain injury and vegetative state.

44. Between April 2018, and June 2018, Brandon was transferred multiple times by ambulance from Kilby Correctional Facility to Jackson Hospital for emergency complications resulting from his vegetative state, including respiratory failure, pneumonia, malnutrition, anemia, urinary tract infection, and horrific decubitus ulcers (bed sores).

45. On June 29, 2018, Brandon was reported to have "had multiple hospitalizations for HCAP and respiratory failure since TBI" and to have multiple decubitus ulcers on "all four extremities, buttocks."

46. On July 20, 2018, Brandon was discharged from Kilby Correctional Facility and placed in the VA Hospital at Birmingham, Alabama. Around August 20, 2018, he was discharged from the Birmingham, Alabama, VA Hospital to a VA long-term-care facility in Tuscaloosa,

Alabama, where he currently remains. VA entry records note that at the time of his arrival he remained in a persistent vegetative state.

47. Brandon's care improved substantially once he arrived at the VA Hospital, and his condition moderately improved once he began receiving proper medical care.

48. On January 10, 2019, he was diagnosed with neurogenic bladder; blister of back without infection; persistent wound pain; neurotrophic keratitis; iron deficiency; osteomyelitis; drug-induced cirrhosis of liver; blepharon conjunctivitis; pressure ulcers of malleolus, sacral region, and shoulder; PEG internally removable; corneal abrasion; contracture of joint of multiple sites; nutritional marasmus; oropharyngeal dysphagia; disorder of autonomic nervous system; drug-induced hypotension; chronic PTSD; depressive disorder; tracheostomy; and traumatic brain injury; all from injuries sustained in the assault by CO McClain and CO Freeman.

49. On January 24, 2019, two DOC investigators came to the VA Hospital to try to meet with Brandon regarding the assault because he had regained some ability to communicate, however they were told by his physician that Brandon did not have the ability to complete a sentence.

50. After his doctor met with the two DOC investigators, she noted in Brandon's records that "I discussed with investigators my significant concerns of clinical neglect while under DOC care. They shared that they were aware of concerns and investigation is ongoing."

51. Today Brandon remains severely and permanently impaired from his brain injury. He is bedridden, unable to verbally communicate, minimally conscious, and completely dependent on others for personal hygiene and food intake.

## COUNT I
### 42 U.S.C. § 1983 Excessive Force in Violation of the Eighth Amendment
### Direct Liability against CO McClain and CO Freeman

52. This claim is brought against CO McClain and CO Freeman, in their individual capacities.

53. At all times Brandon was a post-conviction prisoner protected by the Eighth Amendment's prohibition against cruel and unusual punishment.

54. At all times CO McClain and CO Freeman were acting under color of law.

55. CO McClain's and CO Freeman's above described use of force against Brandon subjected him to unnecessary and wanton infliction of pain.

56. CO McClain's and CO Freeman's above described use of force against Brandon was not applied in a good-faith effort to maintain or restore discipline.

57. CO McClain's and CO Freeman's above described use of force against Brandon was applied maliciously and sadistically to cause harm.

58. There was no need for the force used by CO McClain and CO Freeman against Brandon.

59. To the extent that CO McClain and CO Freeman perceived any need to use force, the amount of force used greatly exceeded any perceived need.

60. Even if CO McClain and CO Freeman initially perceived a need for force, they failed to temper the severity of their response and in fact continued to use force long after the need for force was addressed.

61. The force used by CO McClain and CO Freeman caused Brandon severe, catastrophic, permanently disabling injuries from which he will never recover.

62. CO McClain's and CO Freeman's use of force against Brandon violated his rights under the Eighth Amendment and caused severe and permanent injuries, for which CO McClain and CO Freeman are liable pursuant to 42 U.S.C. § 1983.

63. As a result of CO McClain's and CO Freeman's unconstitutional use of force against Brandon, Brandon suffered and continues to suffer severe physical and emotional injuries, actual and consequential damages, indignity, mental and physical pain and suffering, emotional distress and anguish, medical expenses, lost wages, and loss of power to earn money in the future, and Plaintiff is entitled to compensation for all of the foregoing as well as punitive damages, costs and reasonable attorneys' fees.

64. Plaintiff demands judgment against CO McClain and CO Freeman for actual and consequential damages, indignity, mental and physical pain and suffering, emotional distress and anguish, medical expenses, lost wages, and loss of power to earn money in the future, and Plaintiff is entitled to compensation for all of the foregoing as well as punitive damages, costs and reasonable attorneys' fees.

65. Plaintiff demands a trial by jury.

### COUNT II
### 42 U.S.C. § 1983 Excessive Force in Violation of the Eighth Amendment
### Supervisory Liability against SGT Murphy

66. This claim is brought against SGT Murphy, in his individual capacity.

67. At all times Brandon was a post-conviction prisoner protected by the Eighth Amendment's prohibition against cruel and unusual punishment.

68. At all times SGT Murphy was acting under color of law.

69. At all times SGT Murphy supervised CO McClain and CO Freeman.

70. Although SGT Murphy is not known to have directly participated in the excessive use of force by CO McClain and CO Freeman, there is a causal connection between SGT Murphy's actions and the constitutional deprivation committed by CO McClain and CO Freeman against Brandon.

71. Specifically, SGT Murphy knew that CO McClain and CO Freeman regularly used excessive force, knew that they would use excessive force against Brandon, and not only failed to prevent and permitted the use of excessive force, but also actively encouraged and accommodated it by covering it up, including in this particular case.

72. As a result, SGT Murphy is also liable to Brandon pursuant to 42 U.S.C. § 1983 for the excessive force used against Brandon in violation of Brandon's Eighth Amendment rights and the severe and permanent injuries caused thereby.

73. Plaintiff demands judgment against SGT Murphy for actual and consequential damages, indignity, mental and physical pain and suffering, emotional distress and anguish, medical expenses, lost wages, and loss of power to earn money in the future, and Plaintiff is entitled to compensation for all of the foregoing as well as punitive damages, costs and reasonable attorneys' fees.

74. Plaintiff demands a trial by jury.

### Count III
### Deliberate Indifference to Serious Medical Needs
### Against CO McClain and CO Freeman

75. This claim is brought against CO McClain and CO Freeman, in their individual capacities.

76. At all times Brandon was a post-conviction prisoner protected by the Eighth Amendment's prohibition against cruel and unusual punishment.

77.     At all times CO McClain and CO Freeman were acting under color of law.

78.     As a result of being beaten by CO McClain and CO Freeman, Brandon suffered multiple facial fractures, multiple rib fractures, a skull fracture, and a subdural hemorrhage, all of which injuries were apparent and obvious and caused him to be in such poor physical condition as to be clearly in need of emergency medical treatment.

79.     CO McClain and CO Freeman knew that Brandon needed immediate, emergency medical care but failed to provide any care to him and instead left him lying on the ground, catastrophically injured, and covered in Mace.

80.     CO McClain's and CO Freeman's failure to make any effort to render aid or medical care to Brandon while he was plainly and obviously experiencing and exhibiting symptoms of a severe medical emergency constitutes deliberate indifference to Brandon's serious medical needs and cruel and unusual punishment, in violation of the law and constitution of the United States including, without limitation, the Eighth Amendment.

81.     As a direct and proximate cause of the aforementioned conduct, Brandon suffered and continues to suffer severe physical and emotional injuries, actual and consequential damages, indignity, mental and physical pain and suffering, emotional distress and anguish, medical expenses, lost wages, and loss of power to earn money in the future, and Plaintiff is entitled to compensation for all of the foregoing as well as punitive damages, costs and reasonable attorneys' fees.

82.     Plaintiff demands judgment against CO McClain and CO Freeman for actual and consequential damages, indignity, mental and physical pain and suffering, emotional distress and anguish, medical expenses, lost wages, and loss of power to earn money in the future, and Plaintiff

is entitled to compensation for all of the foregoing as well as punitive damages, costs and reasonable attorneys' fees.

83. Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, Brandon Brooks, respectfully requests that judgment be entered in his favor against the Defendants, CO McClain, CO Freeman, and SGT Murphy:

a. For judgment entered against the Defendants on each claim asserted;

b. For actual, special, punitive, and compensatory damages permitted by law;

c. For the Plaintiff's reasonable attorneys' fees, costs and expenses of the litigation; and

d. For any other relief to which the Plaintiff may be entitled.

## JURY DEMAND

Plaintiff demands trial by jury on all claims.

DATED, this the 20th day of November, 2019.

Respectfully submitted,

Patrick Montgomery
MORGAN & MORGAN
63 S. Royal Street, Suite 710
Mobile, AL 36602
Phone: (251) 800-6030
Email: pmontgomery@forthepeople.com

Adrian Mendiondo (*Pro hac vice* pending)
MORGAN & MORGAN
333 W. Vine Street, Suite 1200
Lexington, KY 40507
Phone: (859) 469-7965
Email: amendiondo@forthepeople.com

*Counsel for Plaintiff*